UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
FALON B. DAVIS,

                               Plaintiff,

                 - against -

LETRICIA MCCLEARY, Parole Area
Supervisor; JAMES OGLE, Senior Parole
Officer; DEPUTY SHERIFF "JOHN"
WILLIAMS, Parole Officer,

                            Defendants.
---------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
17-CV-00659 (PKC)

PAMELA K. CHEN, United States District Judge:

        Plaintiff Falon B. Davis, who is presently incarcerated at the Ulster Correctional Center, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), with the United States District Court for the Southern District of New York on December 20, 2016. By order dated December 28, 2016, the Southern District granted Plaintiff permission to proceed *in forma pauperis*. (Dkt. 4.) By order dated January 31, 2017, the Southern District severed and transferred Plaintiff's claims against two of the originally named defendants, arising out of his solitary confinement while incarcerated at the Mohawk Correctional Facility, to the United States District Court for the Northern District of New York. (Dkt. 8.) Plaintiff's claims against the above-named Defendant Parole Officers were transferred to this Court. *(Id.)*

        In an Order dated March 3, 2017, finding that the complaint did not include sufficient factual allegations to link any acts or omissions by the Parole Officers to the alleged violation of his constitutional rights, this Court granted Plaintiff leave to amend his complaint. (Dkt. 11.) On March 17, 2017, Plaintiff filed an amended complaint, which alleges that his Eighth and Fourteenth

Amendment rights were violated.[1] (Dkt. 12.) For the reasons discussed below, Plaintiff's amended complaint is dismissed for failure to state a claim upon which relief may be granted.

## BACKGROUND[2]

Plaintiff is currently incarcerated for his third parole violation following his initial release from incarceration on May 26, 2011. (Dkt. 12 at ECF 3).[3] Plaintiff asserts that prior to his release on parole he was incarcerated for twenty years and seven months. During his twenty years of incarceration, Plaintiff was placed in solitary confinement on three separate occasions for a total of twenty and one-half months. (*Id.*)

---

[1] On May 4, 2017, Plaintiff filed additional submissions. (Dkt. 13.) In his submission, entitled "Affidavit in Support of Preliminary Injunction and Temporary Restraining Order," Plaintiff asks the Court to "[hold in abeyance] the current 30 month time assessment levied against [him]," reparole him, and provide him with mental health treatment and transitional housing. Because Plaintiff essentially challenges his current incarceration for his parole violation, the "sole federal remedy is a writ of habeas corpus." *Abdul-Hakeem v. Koehler*, 910 F.2d 66, 68–69 (2d Cir. 1990); *see also Muhammad v. Close*, 540 U.S. 475, 500 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ."); *Oliphant v. Villano*, No. 3:09 CV 862, 2010 WL 537749, at *12 (D. Conn. Feb. 11, 2010) ("[G]iven the relief Plaintiff seeks, a temporary restraining order is inappropriate, because '[t]he purpose of a temporary restraining order is to preserve an existing situation *in statu[s] quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.' Additionally, a petition for habeas corpus, not a suit under 42 U.S.C. § 1983, is the proper vehicle through which [plaintiff] can challenge his detention.").

[2] The following facts are drawn from Plaintiff's amended complaint and the exhibits annexed thereto and are taken as true for purposes of this order.

Many of Plaintiff's allegations relate to his conditions of confinement, *e.g.*, solitary confinement and alleged psychological and physical abuse by correction officers, *prior* to his May 26, 2011 release. *See* Dkt. 12 at ECF 3–4 (referring to incidents "[w]hile in Upstate Correctional Facility" and "SHU 200"). The Court disregards these allegations as irrelevant to Plaintiff's claims in this district, and reminds Plaintiff that the instant case only pertains to his claims against the Defendant Parole Officers.

[3] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

Defendant Parole Officers were in charge of Plaintiff's supervised release from April 14, 2017, until his re-arrest on July 1, 2017. (*Id.* at ¶ 2.) Plaintiff alleges that Parole Area Supervisor Letrica McCleary ("McCleary") and Senior Parole Officer James Ogle ("P.O. Ogle") failed to carry out their responsibility of ensuring that parolees receive appropriate mental and emotional healthcare. (*Id.* at ECF 1.) Plaintiff claims that although he did not need drug treatment, he was forced to attend a drug treatment program, which was located in Brooklyn. (*Id.* at ¶¶ 21, 29.) Plaintiff further alleges that Parole Officer John Williams ("P.O. Williams") hindered Plaintiff's attempts to be successful while out on parole. (*Id.*) Specifically, Plaintiff alleges that because he was living in the Bronx, making it to his drug treatment programs on time was challenging. (*Id.* at ¶ 21.) P.O. Williams told Plaintiff that Plaintiff would need to move back to Brooklyn if he cannot be on time for his drug treatments. (*Id.*) "After a few failed attempts to get to the program [on time, he finally] gave up and moved to a shelter in Brooklyn." (*Id.* at ¶ 21.) Plaintiff contends that by requiring Plaintiff to move back to Brooklyn, P.O. Williams "hinder[ed] Plaintiff's re-entry to society by preventing him from living in a drug free home environment" and effectively forced Plaintiff to live in a "prison-like, drug infested" shelter. (*Id.* at ECF 1.) He also asserts that P.O. Williams failed to get Plaintiff the necessary mental health treatment. (*Id.* at ¶ 32.) Plaintiff seeks money damages.

## DISCUSSION

**I.    Legal Standard**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage of the proceeding, the Court must assume the

3

truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In addition, a *pro se* complaint is "to be liberally construed," *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that [it] suggest[s]," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal citations and quotations omitted). However, pursuant to the *in forma pauperis* statute, the Court must dismiss a complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**II.     Fourteenth Amendment Standard**

Construing the amended complaint liberally, the Court interprets Plaintiff to be asserting two claims. First, Plaintiff alleges that Defendants violated his substantive due process right when they were deliberately indifferent to his serious health needs by failing to get him necessary mental health services. (Dkt. 12 at ECF 1, ¶ 32.) Second, Plaintiff claims that P.O. Williams violated Plaintiff's substantive due process right by essentially "forcing" him to live in an unsafe environment. (*Id.* at ECF 1, ¶ 21.)

In order to maintain an action under Section 1983 action, Plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under

4

color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*; *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."); *Schiff v. Suffolk Cty. Police Dep't*, No. 12 CV 1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015) (same). Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). In this case, it is the second element that Plaintiff fails to allege.

Because the alleged constitutional violation occurred when Plaintiff was a parolee, his claims are appropriately analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. *See, e.g.*, *Stovall v. Wilkins*, No. 15 CV 2163, 2016 WL 5478509, at *3 (S.D.N.Y. Sept. 29, 2016); *Ciccone v. Ryan*, No. 14 CV 1325, 2015 WL 4739981, at *3 (S.D.N.Y. Aug. 7, 2015) (noting that the claims brought by the plaintiff, who was "on parole, not incarcerated or institutionalized," when the claims arose, were "appropriately analyzed under the Fourteenth Amendment, not the Eighth"); *George v. Rockland State Psychiatric Ctr.*, No. 10 CV 8091, 2014 WL 5410059, at *6 (S.D.N.Y. Oct. 23, 2014) (analyzing plaintiff's deliberate indifference claim under the Fourteenth Amendment, rather than the Eighth, noting that plaintiff was on parole).

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebado Cnty. Dept. of Social. Servs.*, 489 U.S. 189, 196 (1989). However, the Second Circuit has noted two exceptions to the

general rule that there is no affirmative right to governmental aid: the "special relationship" exception and the "state created danger" exception. *See Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008). Because no allegation in the amended complaint implicates the "state created danger" exception, the Court's consideration is limited to the "special relationship" exception. The Second Circuit explained that "some form of 'involuntary custody' is the 'linchpin of any special relationship exception.'" *Id.* at 156; *see also Deshaney*, 489 U.S. at 200 (explaining that the "affirmative duty to protect arises . . . from the limitation which [the state] has imposed on [the individual's] freedom to act on his own behalf"). "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause." *Jacobs v. Ramirez*, 400 F.3d 105, 106 (per curiam) (quoting *Deshaney*, 489 U.S. at 200).

While the Supreme Court in *DeShaney* held that City and State officials' duty to provide for safety and well-being of individuals in their custody ends when the individual is no longer in custody, 489 U.S. at 199–200, the Second Circuit has recognized that "[a] parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed." *Id.*; *see also Ciccone*, 2015 Wl 4739981, at *5 ("Under *Jacobs*, . . . [the plaintiff] and [the defendant, his parole officer,] clearly had the kind of 'special relationship' which could subject [the defendant] to liability notwithstanding the general rule of *DeShaney*."); *but see George*, 2014 WL 5410059, at *8 (finding no special relationship between parolee and State noting that parolee "was free to find his own medical treatment and there [was] no evidence that he was required to

6

receive treatment [at a] specific [ ] [hospital]"). Nevertheless, where "the limitations imposed by the state are minimal, so too are the duties it assumes." *Jacobs*, 400 F.3d at 107; *see also Rodriguez v. Rivera*, No. 12 CV 5823. 2013 WL 5544122, at *7 ("[W]hether and to what extent the State has assumed a duty of care under the special relationship exception turns on whether and to what extent the State has affirmatively acted to restrain an individual's freedom to act on her own behalf").

Furthermore, in order to succeed on a Fourteenth Amendment claim under the special relationship exception, a plaintiff "must show that the [defendant's] behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican*, 524 F.3d at 155 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998)). "This requirement screens out all but the most significant constitutional violations." *Id.*; *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) ("To establish a substantive due process violation, [a plaintiff] must show that the [defendant's] alleged acts . . . were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" (citation omitted)). "[T]he Supreme Court has explained that 'negligently inflicted harm is categorically beneath the threshold of constitutional due process,' while 'conduct intended to injure in some way[,] unjustifiable by any government interest[,] is the sort of official action most likely to rise to the conscience shocking level." *Lewis*, 523 U.S. at 849; *see also Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." (citation and internal quotation marks omitted)).

Taking Plaintiff's allegations as true, under *Jacobs*, it is clear that Plaintiff and Defendant Parole Officers had a "special relationship," as Plaintiff was subject to limitations on his freedom

7

while on parole. (*See* Dkt. 12 at ECF 5 (alleging that "parole ma[d]e Plaintiff quit [a] job he had obtained and that Defendants told Plaintiff "he could no longer live in the house with his friend and told Plaintiff to move into a shelter"); *id.* at ECF 6 (alleging that Plaintiff was required to enter an in-patient drug treatment program).) Plaintiff alleges that Defendants failed "to recognize [Plaintiff's need for special care]" (*id.* at ECF 1), instructed Plaintiff that he could not live with "his friend," who, according to Plaintiff, filed false reports to the police accusing Plaintiff of abusing her (*id.* at ¶¶ 13–14, 24), and also instructed Plaintiff "to move back to Brooklyn if he cannot get to his drug program [on time]" (*id.* at ¶ 21). However, Plaintiff fails to allege any facts to show that Defendants' conduct rises to the level of a Fourteenth Amendment violation.[4]

### A. Mental Health Care Claim

Plaintiff does not allege facts in support of his conclusory claim that Defendants should have known that Plaintiff needed mental health care. At most, Plaintiff states, "[Defendants] should have been aware that parolees like Plaintiff, [who experienced solitary confinement,] would need mental health treatment" (*id.* at ¶ 28) and that,

> Although Plaintiff did commit violations to the conditions of his parole, Plaintiff was not out committing crimes of larcenous nature or was out using illegal drugs. Plaintiff's most obvious problem was housing, but a problem that would take a professional to see, is emotional. Parole is supposed to be this professional [sic], and to provide its clients with the help they need, not just lock them back up.

(*Id.* at ¶ 26.) None of these allegations suggest that Defendants' conduct rises to the level of "shocking the conscience" and "offensive to human dignity." *See, e.g., Ciccone*, 2015 WL 4739981, at *6–7 (finding plaintiff's allegations that defendants violated his Fourteenth

---

[4] The Court notes that Plaintiff cites to *Peoples v. Annucci*, 180 F.Supp.3d 294 (S.D.N.Y. 2016), in support of his claim for mental health treatment. (Dkt. 12 at ECF 1). However, Plaintiff's reliance on this case is misplaced. *Annucci* is a class action lawsuit that challenged New York State's solitary confinement practices.

Amendment rights by failing to provide him with clothing, refusing to allow him to work, and interfering with his use of prescribed pain medication while he was under parole supervision did not demonstrate defendants' deliberate indifference to plaintiff's health or safety); *Inesti v. Hogan*, No. 11 CV 2596, 2013 WL 791540, at *7 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 11 CV 2596, 2013 WL 5677046 (S.D.N.Y. Sept. 30, 2013) (finding that the City's and State's duty to plaintiff ended upon his discharge from custody, and thus there was no obligation to provide post-release mental health care); *see also McGhie v. Main,* No. 11 CV 3110, 2011 WL 4852268, at *3 (E.D.N.Y. Oct. 12, 2011) (finding there was no deliberate indifference to serious medical needs where parolee's mental health treatment previously provided through the Probation Department abruptly stopped as he was free to find treatment on his own); *Cerbelli v. City of N.Y.,* 600 F.Supp.2d 405, 413 (E.D.N.Y. 2009) (finding that the City was not liable because there was no "constitutional duty to protect [plaintiff] or provide him with medical services once he was no longer in its custody" where psychiatric patient was released and later caused a disturbance at a police station resulting in his fatal shooting); *Luna v. Weiner,* No. Civ.A. 05–2298, 2006 WL 1517747 at *3–4 (D.N.J. May 23, 2006) ("As a parolee, [plaintiff] had the freedom to 'exercise normal responsibility for his own welfare,' and could have secured any medical attention of his choosing." (citation omitted)).

Thus, Plaintiff has failed to state a due process violation based on Defendants' alleged failure to provide him with necessary medical or "special" care.

### B. Unsafe Living Environment Claim

Plaintiff alleges that he was required to attend drug treatment in Brooklyn while he was living in the Bronx, and that because it was difficult to make it to his treatments on time, he was "forced" to move to a "prison-like, drug infested" homeless shelter in Brooklyn. (*See* Dkt. 12 at

ECF 1.) In *Jacobs*, a parolee brought a Section 1983 claim alleging that his parole officers violated his civil rights "by paroling him to his mother's unsafe and unsanitary residence [and] refusing his request to relocate to a homeless shelter . . . ." 400 F.3d at 105. The Second Circuit, applying the now-abandoned standard from *Conley v. Gibson*, 355 U.S. 41 (1957)[5], reversed the district court's *sua sponte* dismissal of the plaintiff's claim "with respect to the state's decision to parole him to allegedly unsuitable housing and its alleged refusal to allow him to move . . . ." *Jacobs*, 400 F.3d at 107. Noting that "the state assumed the very limited duty of ensuring that it did not require [the plaintiff] to remain in a place that [was allegedly] . . . uninhabitable," the Circuit held that because plaintiff alleged that the State "effectively compelled him to live in unsafe conditions," the claim should not have been dismissed. *Id.* Here, Plaintiff's claim that he moved into a shelter in Brooklyn because he "gave up" on getting to his drug treatments on time while living in the Bronx, (Dkt. 12 at ¶ 21), is materially different from the parolee's claim in *Jacobs* and does not raise a plausible claim that Plaintiff was "forced" to live in unsafe conditions in violation of his substantive due process rights. Requiring a parolee to commute to drug treatments in an inconvenient location comes nowhere near the threshold of conduct that "shocks the conscience." *See Stovall*, 2016 WL 5478509, at *4 (finding that "[n]othing alleged in the Complaint shock[ed] the contemporary conscience, or [was] brutal or offense to human dignity . . . [where t]he Complaint merely alleges that Defendants required a parolee with a hard cast on his foot to attend

---

[5] In *Conley v. Gibson*, the Supreme Court held that a trial court should not dismiss a complaint "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46. That standard was abandoned by the Supreme Court in *Twombly* and *Iqbal*, which held that a complaint may be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 (complaint allegations be sufficient to permit court to "draw the reasonable inference that the defendant is liable for the misconduct alleged").

a parole meeting roughly 10 miles away from his home," even though the parolee provided defendants with a doctor's note stating that he was in no condition to travel).

Thus, Plaintiff has failed to state a due process violation based on the parole condition that he attend drug treatment in Brooklyn while living in the Bronx.

## CONCLUSION

Accordingly, Plaintiff's amended complaint is dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court is directed to enter judgment dismissing this action, and to terminate this matter. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 23, 2017
Brooklyn, New York